UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2009 FEB 18  P 1: 25

SIGN
BY DEPUTY CLERK

CECIL HARRIS

VERSUS

AMERICA'S CHOICE, INC.

CIVIL ACTION

NO. 07-195-JVP-SCR

### RULING ON MOTIONS

This matter is before the court on a motion by defendant, America's Choice, Inc. ("ACI"), for partial summary judgment (doc. 52) and a motion by plaintiff, Cecil Harris, for summary judgment on all claims (doc. 53). Both motions are opposed (docs. 60 & 59, respectively) and defendant has replied to plaintiff's opposition to the motion for partial summary judgment.[1] Also before the court is Defendant's Motion to Strike Harris's Response to ACI's Motion to Dismiss its Affirmative Defenses and Counterclaims (doc. 64). Jurisdiction is founded on 28 U.S.C. § 1332. There is no need for oral argument and the matter is now submitted.

### FACTS AND PROCEDURAL POSTURE

Plaintiff originally filed this action on March 2, 2007 in the Twenty-First Judicial District Court, Parish of Livingston, and defendant subsequently removed it on March 21, 2007 on the basis of diversity jurisdiction. The original petition alleges that

---

[1] Plaintiff also filed a Motion for Leave to File Reply Memorandum in Support of Harris's Motion for Summary Judgment and to Supplement Summary Judgment Record (doc. 68). The motion sought to introduce evidence pertaining to the nature of a contract between defendant and the Arkansas Department of Education. Because that issue is not material to this ruling, the motion was denied (doc. 69).

1

defendant owes plaintiff $577,999.00, plus applicable interest, for a commission and bonus that plaintiff allegedly earned while employed by ACI.[2]

Plaintiff contends that his terms of compensation are defined by an employment agreement which was signed and accepted by both defendant and Marietta S. Palmer, ACI's Director of Administration and Human Resources, on August 10, 2005. That agreement provides in pertinent part:

> Your start date is August 16, 2005, with an annual salary of $105,000 plus sales commission as defined by the FY2006 Sales Compensation Plan. The FY2006 Compensation Plan in current form is attached and subject to change by board resolution.

(Doc. 53-7, p. 1).

The attached compensation plan, captioned "Cecil Harris Annualized Comp. Plan," specifies the applicable base salary, quota, and commission rates based upon the percentage of annual quota achievement for the 2006 fiscal year. Under the plan, plaintiff's commission rates for that year were to be based on a quota of $1.5 million in sales. (Doc. 53-7, p. 3). It is undisputed that the ACI fiscal year runs from July 1st through June 20th and is captioned with the year in which the fiscal year ends (*see* doc. 52-2, ¶ 6; doc. 53-3, ¶ 29). Thus, the 2006 fiscal year began on July 1, 2005 and ended on June 30, 2006.

---

[2]Uniform Local Rule 56.1 provides that "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Though the motions for summary judgment in this action are accompanied by documents captioned as statements of undisputed facts, the documents are hardly short and concise as required by Uniform Local Rule 56.1 and there is no need to reproduce them here.

Plaintiff's petition also alleges that during the 2006 fiscal year, he obtained for America's Choice, Inc. a contract with the Arkansas Department of Education and is therefore entitled to a commission on that sale based on his 2006 quota of $1.5 million. Plaintiff's supplemental petition further alleges that, on April 23, 2007, the contract with the Arkansas Department of Education was extended, thereby increasing the value of the contract for commission purposes from $6,095,000 to $6,242,539 (doc. 43, ¶¶ 23-24).

In its answer to the petition, ACI denied plaintiff's assertion that he had qualified for a commission during the 2006 fiscal year, contending instead that his right to a commission arose during the 2007 fiscal year when his quota was significantly higher. Defendant also asserted several affirmative defenses and a counterclaim against plaintiff (doc. 20).

On December 12, 2005, the parties filed the present motions for summary judgment and plaintiff also filed motions for summary judgment on defendant's counterclaim and affirmative defenses (docs. 54 & 55, respectively). On January 28, 2009, defendant moved to dismiss its affirmative defenses and counterclaim (doc. 61). Though plaintiff did not oppose the motion to dismiss, he filed a response in which he alleged that defendant should have dismissed the counterclaim and affirmative defenses at the close of discovery (doc. 62). Defendant then filed the current motion to strike the response, alleging that it amounts to "nothing more than a Rule 11 motion for sanctions in disguise" (doc. 64-2).

## LAW & DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997).

It is undisputed that Cecil Harris earned a commission for his part in procuring the contract between America's Choice, Inc. and the Arkansas Department of Education. At issue is the date on which plaintiff's right to the commission arose. Plaintiff maintains that his right to the commission arose on June 2, 2006, when the

Arkansas Director of Finance approved the Professional/Consultant Services contract with America's Choice, Inc. Plaintiff thus contends that the commission was earned during ACI's 2006 fiscal year and its calculation should be based on the 2006 fiscal compensation provisions that were attached to his letter of employment.

Defendant argues that plaintiff's right to the commission arose during the 2007 fiscal year because a final contract, signed on July 20, 2006, called for performance during the 2007 fiscal year. Defendant thus contends that the commission should be calculated using plaintiff's 2007 sales quota of $4 million instead of his 2006 quota of $1.5 million.

Essential to the resolution of both motions for summary judgment are the terms of the employment relationship defining how and when a sale was to be credited toward an employee's quota for commission purposes. Defendant maintains that under its established policy, quota credit was to be granted only for business booked in fiscal year 2006 for services or products invoiced in that fiscal year. Defendant also contends that "[i]nherent in a booking was a contractually binding commitment, the ability to invoice and a binding commitment to a payment schedule" (doc. 52-3, p. 5; doc. 52-2, ¶ 11). According to defendant, its policy governing quota credits and payment of commissions became a term of plaintiff's employment on September 19, 2005 when the policy was presented to the ACI board of directors and then to the sales force in a training session (doc. 52-3, p. 15).

In support of its argument, defendant cites the deposition of Judy Codding, the Chief Executive Officer of America's Choice, Inc., in which she stated that on September 19, 2005, she spoke to the company's business development managers, including plaintiff, and fully explained "when revenue is recognized toward quota" and "hit on the major pieces" of the issue (doc. 52-2, ¶ 14, *citing* Codding Dep., pp. 132-33). Defendant also cites the deposition of Nicholas Solinger, in which he stated that he relied on business development directors to communicate the information to business development managers, such as plaintiff (Solinger Dep., p. 07).[3]

Plaintiff, however, stated in his deposition that the only thing he was told with regard to quota credit was that he would get credit when a contract was signed (Harris Dep. p. 80). Sandra Bienvenu, a business development director at ACI, and plaintiff's direct supervisor during his employment there, stated in her deposition that she "was told that quota credit and commissions earned would be credited at the signing of the contract" and further stated that she probably gave that information to plaintiff when he was hired (Bienvenu Dep., doc. 53-5, p. 6).  She also stated that she did not recall being told that 2006 quota credit would only be given for business recorded as revenue in 2006 (*id.* at 6-7).

Viewing the above testimony in the light most favorable to the non-movants and drawing all reasonable inferences in their favor, the court concludes that a

---

[3] The record indicates that business development managers acted as sales representatives for ACI.  Each business development manager was responsible for sales in a given geographical area and reported to a business development director, or supervisor, who oversaw the work of several business development managers.

genuine issue of material fact exists as to the terms conveyed to Harris by ACI regarding how and when a sale was to be credited toward his quota for the purpose of determining his commission during the 2006 fiscal year. Accordingly, both motions for summary judgment shall be denied.

The court next turns to defendant's motion to strike. The motion seeks to have the court strike plaintiff's response to defendant's motion to dismiss affirmative defenses and counterclaims on the ground that it is nothing more than a Rule 11 motion for sanctions in disguise. The motion to dismiss affirmative defenses and counterclaims, however, was granted on March 3, 2009. No sanctions were ordered. Accordingly, the motion to strike shall be denied as moot.

## CONCLUSION

For the foregoing reasons, the motion by plaintiff, America's Choice, Inc., for partial summary judgment (doc. 52) is hereby **DENIED**; the motion by defendant, Cecil Harris, for summary judgment (doc. 53) is hereby **DENIED**; and the motion by plaintiff, America's Choice, Inc. to strike Harris' response to its motion to dismiss its affirmative defenses and counterclaims (doc. 64) is hereby **DENIED AS MOOT**.

Baton Rouge, Louisiana, February 18, 2009.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA